UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEINER ENTERPRISES, INC.<br><br>Plaintiff,<br><br>v.<br><br>ADAM CALDWELL, INC. et al.<br><br>Defendants. | Case No. CV 13-08723-AB (MRWx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DAMAGES**<br><br>**TRIAL DATE: FEBRUARY 17, 2015** |

This matter was tried before this Court, sitting without a jury, on February 17–19, 2015. On June 10, 2015, the Court issued its initial Findings of Fact and Conclusions of Law re Liability, finding against Plaintiff and Counter-defendant Beiner Enterprises, Inc. ("BEI") on its claims for breach of contract, breach of fiduciary duty, violation of the Lanham Act, intentional interference with prospective economic relations, conversion, and declaratory relief; and finding in favor of Defendant and Counter-claimants Adam Caldwell, Inc. ("ACI") and Jennifer Caldwell on their claims for breach of fiduciary duty and intentional or negligent interference with prospective business advantage. (Dkt. No. 121.)

The Court requested supplemental briefing on the issue of damages. On June 29, 2015, ACI and Jennifer Caldwell filed their opening supplemental brief re damages. (Dkt. No. 123.) On June 29, 2015, BEI filed its response supplemental

brief re damages. (Dkt. No. 124.)

Having heard the admissible evidence presented by the parties, the arguments of counsel, and the supplemental briefing, and having considered the demeanor and credibility of the witnesses and all papers and exhibits presented by the parties for purposes of this trial, including admissions in the Final Pretrial Conference Order, the Court makes the following supplemental findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## SUPPLEMENTAL FINDINGS OF FACT

### A. Financial Harm Suffered by ACI

1. ACI seeks damages for lost profits, which is the revenue ACI would have enjoyed but for BEI's conduct that amounts to breach of fiduciary duty and interference with ACI's economic advantage minus saved expenses. (Trial Tr. at 375:25-376:15 (P. Delangis) (expert testimony).) BEI's conduct that resulted in lost profits (hereinafter referred to as "BEI's breach") includes BEI negotiating with and providing All Current ACI's confidential information, insisting that BEI agree to an asset sale to All Current that was not in ACI's best interest, instructing ACI to cease selling BEI inventory in violation of the partnership agreement, and contacting Vendors A, B, and C, and asking them not to do business with ACI.

2. In calculating ACI's lost profits, saved variable and fixed expenses are deducted from the lost revenue figure because they would not have been incurred due to the loss of sales. (Trial Tr. at 377:14-378:7 (P. Delangis) (expert testimony); *see also* Ex. 135 at Schedule 4.)

3. Future lost profits are also discounted to present day value. A discount rate of 9.11 percent is an appropriate and reasonable discount rate in this case. (Trial Tr. at 379:11-380:2 (P. Delangis); Ex. 90.)

4. Finally, the future lost profits calculation does not include any payments that would have gone to BEI vis-à-vis the special markup payment arrangement, described in the Court's initial findings of fact and conclusions of law (*see* Dkt. No.

1     121); and it assumes that ACI's sales would have remained stagnant (a zero percent growth rate) for the five years following BEI's breach. Thus, based on ACI's average sales from 2008 through 2012, it is reasonable to assume that ACI would have continued an average revenue of cost of goods sold of 71 percent of their total net sales, but for BEI's breach. (Trial Tr. at 375:4-8, 384:10-385:23 (P. Delangis); Ex. 135 at Schedule 4.)

       5.     ACI also lost profits with respect to lost customers. Prior to BEI's instruction to ACI to cease selling BEI inventory, ACI had approximately 1,300 customers. Upon and as a result of BEI's instruction to ACI to cease selling BEI inventory, and ACI's compliance with that instruction, 124 of ACI's customers completely stopped purchasing inventory from ACI as a result of BEI's breach. These 124 customers were, in the aggregate and on average, responsible for at least $320,000 of ACI's annual revenue prior to BEI's breach. (Trial Tr. at 398:8-399:4 (P. Delangis).)

       6.     In light of the above, ACI suffered lost profits in the amount of $261,558 in 2013 and $572,070 in 2014 as a result of BEI's conduct. (Trial Tr. at 390:6-395:12 (P. Delangis); Ex. 135 at Schedule 1.) Assuming that ACI has a sales growth rate of 13 percent per year (a conservative estimate), which would allow ACI to achieve its pre-July 2013 sales levels within five years, ACI will continue to lose profits from 2015 through 2019 equal to $1,151,264. (Ex. 135 at Schedule 1.)

## SUPPLEMENTAL CONCLUSIONS OF LAW

**B.     ACI's Damages**

       1.     As provided in the Court's initial findings of fact and conclusions of law, BEI breached its partnership fiduciary duties of loyalty and care to ACI when BEI negotiated the asset sale of ACI's assets to All Current (a competitor of ACI) without informing ACI; provided All Current with confidential material related to ACI, such as ACI's financial statements, partial customer list, and sales information; insisted that ACI agree to terms of an asset sale to All Current that were not in ACI's best interest;

and instructed ACI to cease selling BEI inventory in violation of the partnership agreement. Additionally, BEI intentionally interfered with ACI's prospective economic interest when – after BEI disassociated from the partnership and while it was negotiating the asset sale to All Current – BEI contacted vendors and asked them not to do business with ACI; as a result, these vendors altogether stopped doing business with ACI for a certain period of time; and upon resuming business with ACI, the vendors required ACI to purchase inventory under the cash-on-demand method. BEI's breaches of fiduciary duty and intentional interference with ACI's prospective economic relationships were a substantial factor in causing ACI to suffer economic damage.

  2. BEI argues that ACI cannot recover damages because ACI never sought an accounting following dissolution of the partnership, BEI did not wrongfully disassociate from the partnership, and any claims involving harm suffered as a result of BEI's contact with Vendors A, B, and C are preempted under the California Uniform Trade Secret Act. (*See generally* Dkt. No. 124.) These arguments are without merit.

    a. First, BEI argues that ACI cannot sue for damages until the partnership has been dissolved and an accounting has been rendered. (Dkt. No. 124, p. 1.) Ordinarily, partners cannot sue each other for damages based on a partnership business until there has been an action for dissolution and accounting. *Corrales v. Corrales*, 198 Cal. App. 4th 221, 228 (2011) (citing *Malott v. Seymour* 101 Cal. App. 2d 245, 246 (1950)). However, in cases where there are no liabilities to settle except as between the partners themselves, such course is not necessary. *Driskill v. Thompson*, 141 Cal. App. 2d 479, 482 (1956) (citing *Shuken v. Cohen*, 179 Cal. 279, 283 (1918)); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962) (noting that to maintain an action for an accounting, it must be shown that the "accounts between the parties are of such a complicated nature" that only a court of equity can satisfactorily unravel then, and the "burden of such a showing is considerabl[e] and it

will indeed be a rare case in which it can be met). As this dispute is solely between the partners themselves and their various rights and liabilities are easily determinable, an action for accounting is unnecessary, and ACI's failure to pursue a separate action for an accounting does not preclude it from recovering in this action. Even assuming an accounting is necessary here, the assets that BEI contends are in dispute were settled when the Court issued its initial findings of fact and conclusions of law. (*See* Dkt. No. 121.) The Court held that BEI failed to establish that it is entitled to anything more than BEI's costs of goods already sold plus the corresponding special markup sales, and ACI paid BEI those balances on or before July 20, 2013. (*Id.* at ¶¶ 88-90, 127.) Thus, to the extent an accounting is necessary, the requirement has been satisfied.

   b. Next, BEI argues that because its dissociation was not wrongful as a matter of law ACI is precluded from recovering damages for breach of fiduciary duty. (Dkt. No. 124, p. 1.) While wrongful dissociation is one theory under which a partner can recover damages, *see* Cal. Corp. Code § 16602, it is not a requirement for damages sought pursuant to a claim for breach of fiduciary duty. Cal. Corp. Code § 16404; *see, e.g.*, *Lund v. Albrecht*, 936 F.2d 459 (9th Cir. 1991) (awarding damages to one partner for breach of fiduciary duty by the other partner absent a finding of wrongful dissociation). Assuming BEI did not wrongfully dissociate (the Court makes no finding one way or another), ACI would not be precluded from recovering damages under the separate cause of action for breach of fiduciary duty.

   c. Lastly, BEI argues that ACI's claim for damages based on BEI's interference with Vendors A, B, and C is preempted by the California Uniform Trade Secrets Act ("CUTSA") because the Court found that the Vendors constitute trade secrets. (Dkt. No. 124, p. 4.) Under CUTSA, common law claims based on misappropriation of trade secrets are preempted if there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in the common law claim. *Norsat Int'l, Inc. v. B.I.P. Corp.*, No. 12CV674-WQH-NLS, 2013 WL

5530771, at *6 (S.D. Cal. Oct. 3, 2013).  ACI has not filed a common law misappropriation claim; to the extent BEI asks the Court to construe ACI's claims for breach of fiduciary duty and intentional interference with prospective economic interest as common law misappropriation claims, ACI's claims are materially distinct from a trade secret misappropriation claim.  The Court's finding that the Vendors constitute trade secrets does not affect this analysis.  CUTSA does not preempt ACI's claims or ability to recover under them simply because the Court found that Vendors constitute trade secrets.

3. In the context of this case, a lost-profits calculation is the most appropriate measure of damages.  Lost profits must be determined to a reasonable certainty as the amount ACI would have earned but for BEI's breach, minus saved expenses.  *See, e.g.*, Cal. Civ. Jury Instruction 3903N, Lost Profits (Economic Damage); *see also Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884 (2002).

4. ACI is awarded damages in the amount of $1,984,892, which the Court deems to be a reasonable damages figure based on the conservatively calculated lost profits analysis presented at trial, and which ACI proved to a reasonable certainty at trial. Postjudgment interest shall accrue on this damages amount beginning the date of the entry of judgment at the rate provided under 28 U.S.C. § 1961(a).

Defendants and Counter-claimants ACI and Jennifer Caldwell shall file and lodge a proposed judgment consistent with the Court's findings of fact and conclusions of law within ten (10) days of this Order.

**IT IS SO ORDERED**.

Dated:  August 21, 2015

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE